We'll hear the first case on calendar, United States v. Lynn. Thank you. Good morning, your honors. May it please the court. I'm Megan Bennett, and I represent defendant appellant Jin Lynn, who is currently serving a life sentence without the possibility of release. Mr. Lynn is entitled to relief for five reasons in this case. First, the district court abused its discretion in refusing to accept his guilty plea. Second, count three, the firearm charge, was premised on a Hobbs Act extortion that is not categorically a crime of violence. She didn't refuse to accept it. She said she wanted to have further information. She was very clear at a subsequent appearance that she rejected the plea. In fact, she said to the government, I rejected the plea, if you recall. Why then would she ask for more information if she'd already irredeemably made up her mind? When she, at the first appearance, at the end, when she said, I think it's a close question, I would like to hear a little bit more information. And both the government and defense counsel said at that time, we believe that the allocution was sufficient. They're not the ones who decide that. Pardon me? They're not the ones who decide that. Correct, and the judge at that point said, I guess maybe you have to go beyond the express words. But she clearly said, what she expressly said was, the information that was provided to me here was not sufficient. What she said, in her own words, was, I'd like to hear a little bit more that you can't aid and abet if you don't expect. You haven't really gotten a clear notion of aiding and abetting here. I'd like a little bit more allocution, frankly, because you haven't gotten to aiding and abetting here. Look, don't you have another problem with respect to this? This was a C1A plea, and even if the allocution had been perfect, she had the right to reject it. Absolutely. She absolutely has the discretion to reject that plea, but if she's going to do so, she has to state the reasons for doing so on the record, and they have to be reasonable. And the- As I read what happened, she said, essentially in Hike-Verba, I'm going to accept the plea, but I want to hear a further allocution. Now, to me, the most logical interpretation of that is, I don't have a problem with this being a C1A plea. Assuming I get a satisfactory allocution, I'll take the plea, but I haven't got it yet. So, Judge Kaplan, I think that may have been what she was saying. She didn't say it expressly. I think one of the problems with the plea proceeding is that the reason for her rejecting, or the reason for her not accepting the guilty plea at the first allocution, to my mind, is not fully evident on this record. So, if she- It doesn't matter, because she had to satisfy herself, excuse me, that there was a sufficient basis in fact to warrant taking the plea. And first of all, she made perfectly clear she didn't have that yet. And secondly, that was perfectly reasonable. But it's neither here nor there, because she certainly had a right to insist on hearing more, to be sure she had an independent basis in fact. So, I agree with your first statement, that she had to find a factual basis for the plea. But I disagree with the second statement, that it was reasonable for her to conclude that she did not have a sufficient factual basis based on what Mr. Lynn allocated to at the time. At the time of that plea proceeding, the only elements of the crime to which he was pleading guilty were that he aided and abetted the possession, use, or carrying of a firearm in furtherance of a crime of violence, the Hobbs Act count. And there was no requirement that he needed to have foreknowledge that the weapon was going to be fired. And she was very clear when she said, you can't aid and abet if you don't expect. She believed it was a little bit weird that Mr. Lynn stated that he didn't expect Little Beijing to fire the weapon. That was clearly a misunderstanding of the law at the time of the plea proceeding. Prior- You know, I learned a long time ago from Judge Friendly in the school of Hard Knocks, standing where you are, that what you're appealing from is a ruling, not from comments made in the course of a colloquy. And the ruling was simply, I want to hear more. And then the whole matter was mooted when your client changed his mind overnight and decided not to plead. Well, I think, let's go back to what happened between the first appearance and the second appearance. At the end of the first appearance, Judge Cederbaum is saying, I want to hear more. I have heard you say that you knew Little Beijing was armed. I heard you- I will accept the plea, but I would really like to hear another elocution. Right, so if she had, Judge Jacobs, if what she is saying is she is accepting the plea, then he pleaded guilty on that date, on the first appearance. The reason that they had to come back, that this proceeding wasn't done, she did not, if she had actually accepted the plea, we wouldn't even be here. She didn't accept the plea. She wanted them to come back by making them come back- I will accept the plea, meaning, I would take it, that I don't really see a problem with it, but I'm not comfortable. And she's got to get comfortable, she has the right to do this. She's accepting a plea with some very serious offenses. And defense counsel at the time said, well, can you give me a sense of what you would like to hear at the next appearance? And that's when she says, I think it's a little weird that without some, essentially without some knowledge that Little Beijing was going to fire at the competitor, that Mr. Lin was guilty of aiding and abetting. And if you look at what happened between- That's just not a correct statement of what the transcript shows. She said, I will accept the plea, but I would really like to hear another allocution. And the defense counsel basically said nothing more than that the defendant is nervous and he's tried to answer your questions. That's what he said. He didn't say, what do you want to hear? Before, Your Honor, I believe it's on the page. It's after that, it's on page A86 when Mr. Cohen says, can you give us a little bit of guidance as to what aspects of the allocution you would like to have fleshed out? That's after she says, it's a close question, I will accept the plea, but I want to hear another allocution. Mr. Cohen then says, okay, well, what do you want us to tell you? And the judge says, I would like it to be clear if he never told, if Mr. Lin never told Little Beijing, this is page A86, never told Little Beijing before to beat anybody, it's a little weird that saying teach him a lesson means that he should beat him, of course he's nervous. My guess is he's reluctant to face up to the fact that he may well have instructed violence, which was not an element of the crime at the time. It was aiding and abetting the possession, use, or carrying of a firearm. The discharge at that time was simply a sentencing factor. It wasn't until after this that the Supreme Court decides a lien, at which time the discharge becomes an element. But at the time of the plea, Judge Cederbaum is saying he's reluctant to face up to the fact that he may well have instructed violence, which he did not need to have done to have committed an aiding and abetting of a 924C. Well, you could read the text that you're relying upon as the judge's explanation for why the client may be nervous. May be nervous because he doesn't want to face up to the fact that he may well have instructed violence. She's not saying that's an element, but she's saying that may be why he's nervous and being nervous, his testimony is insufficiently clear, categorical, and reliable that she would be willing to accept the plea. Expects that tomorrow he'll calm down and be able to allocute in a way that would satisfy her. But if you look at the colloquy leading up to that, the back and forth with the judge all has to do. The judge knows, the defense counsel says, I think Mr. Lin already allocated to the fact that he was aware Little Beijing had a firearm, this is page A65. Yes, he did, he did, he said he knew he had a gun. The government wasn't sure that that was in the record and so they went back again and made it even clearer that Mr. Lin allocated to having known that Little Beijing was going to fire the weapon and that is the nature of all of the colloquy leading up to Judge Cederbaum's statement that she thinks that he's nervous or that he's uncomfortable admitting that he ordered violence. I think the only reasonable inference from the colloquy and her subsequent statement is that she wants him to come back and admit that he knew that Little Beijing was going to fire the weapon, but one of the other problems here is that it's just not clear from the transcript. So as the Seventh Circuit and the Ninth Circuit have both held in cases in which they found that the district courts had abused discretion in rejecting guilty pleas, without a clear articulation as to why the guilty plea was rejected, it may have been rejected because, it may have been rejected because the judge thought it was too lenient, it may have been rejected for, given the nature of the- Let me ask you another question. Suppose for the sake of argument you're right, that the plea was accepted the moment she said I'll take the plea. Let's just assume that. Didn't he have a right to withdraw his plea for any reason from that point onward, at least for the short term? That's an interesting question. I'm not, I mean, I'm thinking about, I suppose you would be in a better position to know how frequently judges, district court judges may or may not allow defendants to withdraw their pleas within that short period of time. I mean, certainly if he came back to court and said that he was, he'd been intoxicated at the prior appearance, or if there was some reason for the court to believe that his plea on day one was not knowing and voluntary. Having admitted to the elements, you're right, and I'm thinking, sorry, you are right, thinking about the- Okay. The- If by saying, I will accept the plea, I want to hear more allocution. Judge Cederbaum, as a matter of law, accepted the plea. And the next day he came in and said, my client doesn't want to plead guilty anymore. And she proceeds with the case. Hasn't she, at least by implication, permitted him to withdraw his plea? Well, how do we- And game over for you on this point? How do we reconcile that with her express observation? I think the only thing about the plea that is clear here is her statement that she rejected the plea. So how do we square the scenario in which it was accepted on day one and he withdraws it on day two with the judge's clarification that she rejected the plea? When did she make that remark? So she says that on April 4th of 2013. So that's- How long after the- It was quite a while after. She said that because the government came in trying to clear up the record that I believe the government recognized was problematic. What was the time interval? So that was- he attempted to plead guilty in July, June of 2012. So it was less than a year. It was something in the order of eight or nine months. She certainly- they had appeared repeatedly on this case after the failed plea proceeding. So they had appearances throughout the summer, in the fall, in the winter, leading up until April. And it was on the eve of trial when the government came in, I believe, recognizing that the plea allocution and the court's rejection of the plea was problematic. And the court- the government comes in to say, we just want to make it clear for the record that Mr. Lynn forfeited and waived his right to plead guilty. And the district court clarifies, no, I rejected it. So if he had come in, if she'd accepted the plea and he'd expressly withdrawn it, I don't know that I would have the same argument. But that's just not the situation here. Is your point that she did accept it or that she should have accepted it? My point is that she should have accepted it. Yes, that she should- Not that she did. No, I- Well, all right. So even if you're right, she should have, does that give him a right here fixed for all time at that moment? Or do we look at the entire proceeding, including his indication? He doesn't want to plead. Even if she should have done it then, don't later events solve the problem? So as I understand your question, you're saying what, if anything, should he have expected? Or is it because of the trial? We had this error-free trial. Even if she should have, even if. You're here challenging an ultimate judgment on a record where he indicates he doesn't want to plead. So I would say that where he indicates he doesn't want to plead, which is day two of the proceedings, he has come into that immediately prior. The judge says, I need my interpretation of the comments. I want to hear a little bit more. I think he's uncomfortable. He may be uncomfortable admitting that he ordered violence. All of which you may be right indicates she should have taken the plea earlier. So when he comes back on day two, he comes back with the reasonable belief that she will not accept a plea unless he admits that he ordered violence. And if he could not honestly and voluntarily allocute to having ordered little Beijing to fire the weapon, he would reasonably believe that there was no way that his plea would be accepted. He came back the next day and said, in view of your Honor's insistence on what I have to allocate to, I've decided I'd rather not plead. But that's not this record at all. But no, but there was an entire day of a plea proceeding, a plea allocution. And I guess I would say, how many more times does he need to say the same thing, which is, I knew little Beijing had a gun. I wanted him to threaten my competitor. And that little Beijing had acted violently for me on other occasions. Or that little Beijing was my bodyguard and I expected him to use violence on this occasion. If they'd spent an entire day saying that, he could have said the same thing on day two. But there was no reason for him to believe at that point that any further allocution would. His lawyer is attempting all through the proceedings on day one, with the assistance of the government, to persuade Judge Cederbaum that the allocution was sufficient. And if anybody really thought that it hadn't been accepted at that point, because she was operating under a misapprehension of law, and if the client wanted to plead under what the client viewed as a correct, and to his way of thinking, more congenial view of the law, why doesn't he come in the next morning with a memorandum for the judge saying, Judge, here's why it's sufficient as a matter of law. And the client wants to plead, and please look at the authorities, and let's revisit this. Well, I think this is getting a little bit to the preservation issue. I mean, under Rule 51A, how much do you have to do, or Rule 51B, how much do you have to do to preserve your objection? The judge made it clear she was prepared to consider a further allocution, and a disposition, at least, to accept the plea. And on day two, your client says, all done with that, don't want to plead. Let's go. But if she had said, come back on day two and say exactly what you said on day one and then we'll be done, he could have done that. But what she said was, come back on day two and say more, and he came back on day two and said, it's not going to work to say more. He doesn't have to make an exception beyond trying to get her to accept his guilty plea. Her rejection of the guilty plea was a rejection of his effort to inform the court of the action that he wanted the court to take. I fear we have eaten up more than all of your time on an issue that may not be what you want to spend your time on. Would the court be inclined to hear me on sentencing? Go ahead. All right. So after rejecting the plea, Mr. Lynn went to trial. He was convicted on the four counts, none of which carried a mandatory life sentence, three of which had high guidelines ranges. I do not think that the pre-sentence investigation report calculated the sentencing guidelines correctly, but irrespective of that argument, the district court engaged in no sentencing guidelines analysis, in no section 3553 analysis. That's actually incorrect because in the, I believe that in the statement of reasons, and I appreciate that you may not have this.  All right. In paragraph 3 on page 1 of the statement of reasons attachments, she did set forth the sentencing guideline analysis. And on page, on the second page under section 4, she indicated that the sentence was not greater than 24 months. It's internally inconsistent. So either she made a mistake on one section or the other. Obviously, the sentence was not greater than 24 months. But if that's incorrect, I'm not sure that there's any reason to rely on the numbers that appear on page 1 as having been correct. There's nothing on the record about the sentencing guidelines analysis whatsoever. She spent six lines, six lines sentencing him to life. The rule that a statement in the statement of reasons is enough. It doesn't have to be on the record. Under section 4B, of course, if the sentences within an advisory guidelines range greater than 24 months, as it is here, the specific sentence is imposed for these reasons. There's a section there. You're allowed to use, as you know, you're allowed to use an additional page if you can't fit in the reasons in that section. She didn't do any of that. I would suggest that the reason for that is that for a long sentence, a court should explain its reasoning. You stood up and said she made no sentencing guideline determination. That is wrong. You have an argument that maybe she made a mistake. That's fine. You have an argument that she did something else that was incorrect. I understand that argument. But to say there's no sentencing guideline determination? I understand your issue with my representation, but I stand by it. The statement of reasons, I don't know how that was included. I've never had a sentencing in which a district court judge hasn't at least stated on the record, I'm adopting the sentencing calculation set forth in the pre-sentence investigation report. This does correspond to the PSR, but I don't know that she adopted it expressly. It's a reasonable inference, but I can't tell that from the record. And the question is, is this record sufficient for a circuit court to review the procedural reasonableness of the sentencing? In the United States against pain, this court held, and I quote to you, a district court satisfies its obligation to make the requisite specific factual findings when it explicitly adopts the factual findings set forth in the pre-sentence report. It may do so either at the sentencing hearing or in the written judgment it files later. Now, why isn't that the end of your argument that she didn't compute the sentencing guideline range? I will say one last thing, and then I think that we just disagree on this, but she didn't explicitly state in the statement of reasons that she was adopting the PSR. She could have said that under 4B, and she didn't. The finding in the statement of reasons as to the guidelines is or is not identical to the computation in the pre-sentence report. Although, interestingly, I suppose the supervised release guidelines are consistent as well with the PSR. She obviously made some findings that are different than what is listed in Section 3. The offense level and the criminal history category are consistent. I'm not saying that they aren't consistent. Let's say that she did engage in the guidelines analysis. If I were to concede that point, there's nothing to suggest that she engaged in the Section 3553A analysis. Even if she did engage in the guidelines analysis, simply adopting the statement of reasons, though perhaps sufficient in a case with lesser sentencing consequences, I would say in this case, in which she previously rejected a plea of guilty that would have carried a 10-year sentence on the basis that Mr. Lynn's allocution on aiding and abetting was insufficient, and then subsequently instructed the jury on aiding and abetting with instructions that were identical to what he attempted to plea guilty to when she rejected his plea. So she says, your allocation to aiding and abetting is insufficient for purposes of the plea. He goes to trial. She instructs the jury on elements of aiding and abetting identical to what he was trying to admit to and what she rejected to previously. And she then— Thus suggesting, perhaps, that had the lawyer come back on day two and said, Judge, here's the law. Here's the instructions you've given in other cases on aiding and abetting. The allocution was sufficient except the plea. She might very well have done so.  Let's assume for a moment that she was wrong on day one when she said that she needed to hear more, that he wasn't quite there. If she was wrong on day one, and if he forewent that plea, if she was wrong on day one, she didn't accept the plea on day one, and he comes back on day two, and on day two she is correct, unless she reverses her decision to reject the plea. I'm saying if you accept that her statement is a close question, I'd like to hear a little bit more. I don't think he's ready to admit he may have ordered violence. If that is a rejection, and if it was based on a legal error, the fact that they come back on day two, he should not have to then say, I'd like you to review that decision that you already made on day one in order to still have the argument about the plea. Why isn't her statement on the record at sentencing, though conceitedly spare, adequate? She took into account his youth, the awful responsibility and consequences of a judge imposing any life sentence, but particularly one on a young person, but goes on to justify the decision she had come to by reflecting on the fact that he's responsible for taking a human life. Why isn't that enough? At least coupled with the presumption that this court always affords district judges that they consider all of the 35, 53 factors. I'm sorry, the circuit court always... That they consider the 35, 53 factors. A presumption of having considered the factors. Essentially, without having to enumerate them. I think it is hard to credibly argue that the six lines that she spent in imposing a life sentence encompassed an entire review of the 35, 53A factors. If the court wants to adopt a policy that any time a sentence is imposed... I didn't say that. No, but I was going to say that if the argument is that any time a sentence is articulated on the record, the circuit court must presume that the 35, 53A factors were taken into consideration, then yes, in this case, Mr. Lynn did have the benefit of a considered sentencing proceeding. But I think that's the only rule under which this plea would satisfy the requirements of Gall and Kimbrough and the circuit's rules on what record needs to be made for purposes of many things. Both meaningful appellate review, but also for the benefit of the victims or the defendant to understand the circumstances and factors that were weighed in fashioning that sentence. And there are certainly cases, I'm not minimizing the misconduct here, and it may have been that a life sentence was appropriate under the circumstances, but there are certainly cases that involve similar misconduct that result in substantial sentences but terms of years, not life sentences. For example, in the Hill case, which was decided in August, which was the 924C case, so terrible facts, the young man shoots a livery cab driver in the head for no reason. The district court judge imposed a sentence of 43 years. I don't think the government appealed the reasonableness of that sentence, and I'm not saying that 43 years was what Mr. Lynn should have received, but I don't think there should be a presumption that a life sentence in a case that involved homicides is necessarily reasonable when the record doesn't reflect that. You have reserved a couple of minutes for me. Yes, thank you. We'll hear you then. Good morning, Your Honors. May it please the Court, my name is Jennifer Burns, and I'm an assistant United States attorney here in the Southern District of New York. I represent the United States on this appeal, and I did in the case below as well. I'd like to respond briefly to the arguments raised this morning. First, just that Judge Cederbaum's rejection of the defendant's attempt to guilty plea was not an abuse of discretion. In your view, did she reject it? She clearly believes she did. Well, eight months later. Exactly. But I think to Your Honor's points this morning, what happened on the record, which was a very confused and convoluted record, which I think justified Judge Cederbaum's expression of wanting a clear allocution. You had counsel interrupting, stating what they think had happened, what the defendant said. That doesn't amount to a rejection. No. I'm confused, and I'd like to hear it in a way that is coherent and reassuring to me as a judge.  Certainly, Your Honor. I was just going back a step. But I think then, ultimately, at the end of the proceedings, what Judge Cederbaum makes clear is that she is open to hearing more. And then the defendant takes that opportunity overnight to make a decision about whether he wanted to go forward. And he came back the next day, and when the judge started to ask more questions to satisfy herself, his counsel said he does not want to go forward. And then we came back again two weeks later. So he had another opportunity, if he wanted to, to Your Honor's points of to either raise that this was legally sufficient based on the law, or to, again, try and allocate in a way that was perhaps concise and more clear to the judge's satisfaction. Those opportunities were presented to the defendant multiple times. So I believe that he ultimately made the decision not to go forward, and there's no prejudice to him based on that fact. What was the government's position on day two with respect to the plea? Your Honor, the government did submit a letter to Judge Cederbaum stating that we believed it was legally sufficient based on the law at the time, and based on a review of the record. But that's not our decision to make. It's ultimately the judge's decision to accept the plea. What would have been the maximum? Life, with a mandatory minimum of 10 years. And turning then to the sentence that was imposed, as we've noted, it was a brief proceeding, but certainly procedurally sufficient. And the sentence imposed was substantively reasonable. While the proceeding itself was short, certainly the case was not, and certainly Judge Cederbaum's opportunity to observe the defendant and learn about him, in part through these lengthy attempted plea discussions that we've been addressing this morning. She learned about his background, his history and characteristics, and through trial learned about his lengthy and terrible criminal history. So she certainly had a basis on which to find that a life sentence was reasonable, and it was within the guidelines which were properly calculated. If Your Honors have no questions, then we will rely on the arguments set forth in our brief. And for all the reasons set forth therein, I believe the defendant's conviction should be affirmed as well as his sentence. You know, I want to address with you a different question. Yes, Your Honor. Did you put in any evidence with respect to the question of whether Mahjong and Tai Lin constitute gambling? We did present evidence regarding the fact that bets were wagered, that the House took a commission, 5% was the consistent amount the witnesses testified to, that people gambled every night, multiple employees worked in these gambling parlors, and some of the witnesses themselves were shareholders in these gambling parlors, and took the commissions that are sort of the essence of a gambling operation. If it was gambling, which is a term of art. I think it's clear from the record these are games of chance. Well, where in the record is it clear that they're games of chance? I think you could conclude that from the evidence presented by the witnesses. Admittedly, nobody explained how the games themselves are played. Right. We concede that. Is chess a game of chance? For me it would be, certainly. Me too. But if there's a match between two grand masters, is that a game of chance? I think there's always some element of chance there, and perhaps factors that play into it. Even if they're masters, maybe that day somebody is not doing as well as they normally would. But here in these cases, I think people went in expecting to take their chances and gamble and win, and there were wins and losses. Does the record reflect whether the tiles people begin with are drawn at random? It does not, Your Honor. There is little detail, admittedly, as to how precisely the games are played. But there is consistent testimony from the witnesses that the gambling parlors the defendant operated had those two games, and that multiple workers and commissions were taken on every game. I must say that the fact that commissions were taken, to the extent they were taken on whatever transpired between the players of the games, strikes me as insufficient, perhaps, without evidence that the games that were being played were games of chance. That is to say that they were gambling within the meaning of the New York penal law. Your Honor, we submit that the evidence is sufficient based on the record, based on the testimony of the multiple witnesses who... Who said they were gambling parlors. Some were gambling partners. They were also players, bettors. They discussed the fact that they went to these gambling parlors regularly themselves. Most of them, I think, said they lost pretty much everything that they made. They were not very successful, certainly. Look, I'll just share this. There was a whole string of cases in this district and across the river within the last five years that repeatedly presented the question of whether poker was gambling. And I had one of them. Judge Weinstein had one of them. The Court of Appeals ultimately had no problem with the proposition that poker was gambling, but there is a much greater body of knowledge about what's involved in poker. And I'm very surprised, given the history of disputes over whether poker was gambling and what kind of factual record you needed to get to the jury on that proposition, that no evidence about the nature of these games was put in. And the record is as it stands, Your Honor. But certainly, even if the Court were to find that those predicates were not established, the government did prove up other predicates which would maintain the convictions on the RICO. Isn't there another way of dealing with those predicates? Yes. The record, I think, makes clear that, at least with respect to the game Jen Lin, there were the players present and there were many other people who were betting who were not players. Right. There were people collecting the money. There were workers. I believe there were people in the security. But there were other people placing side bets on the Jen Lin games in which they were not participants. Now, that betting was unquestionably gambling, regardless of whether the underlying games were gambling. Isn't that true? I believe that's true, Your Honor. And there's evidence from which the jury could have concluded that the defendant was promoting and taking commissions on the side bets. Certainly. I think the evidence was overwhelming as to the fact that the defendant was obtaining money from this gambling operation and drawing all inferences in favor of the government, that that part of the evidence certainly is something the jury could have relied on. Thank you. Thank you, Your Honors. Ms. Bennett, you've reserved a couple minutes for rebuttal. We'll hear you now. If the court will have me, on Judge Kaplan's question about the sort of second level gambling, not the game itself, but betting on somebody else's game, the side bets, I'd just point the court to page A697 of Volume 3 of the appendix, in which Judge Cederbaum is instructing the jury on the New York State Penal Law element to the... Can we have the page again, please? 697, Your Honor. And it's on page 1055, which is the top right of... Sorry, 697 of the appendix and transcript page 1055. All right. Thank you for the reference. Let me see if I can... At the bottom of that top right quadrant, the judge says that an activity constitutes gambling under New York State Penal Law when a person stakes or risks something of value upon the outcome 1 of a contest of chance. I'm adding the 1. A contest of chance or a future contingent event not under his control or influence. So I think, actually, that that statute, as read to the jury, is not clear that they had to find that the side bets... That they could have relied on the side bets as having been, I guess, in the alternative. But we don't know because the jury... I'm sorry. Well, yes, but there was no objection to the instruction, and the instruction clearly covers the side bets because the side bets are risking something of value on a future contingent event, that is, who wins the card game, that are not under the control or influence of the side bet. But the instruction instructs on contest of chance or a future contingent event, and it's not clear on which basis the jury premised its findings on those racketeering acts, although Your Honor is correct that there is no objection in the record to that instruction. Could I briefly address our argument on count 3, the 924 violation, in which the Hobbes... Unless Your Honor had further questions on the... Well, it's up to the presiding judge. Oh. The 924 count was premised on a Hobbes Act extortion as having been the crime, the requisite crime of violence, and it's under the categorical approach because a Hobbes Act extortion can and frequently has been committed without actual threatened or attempted use of physical force against a person or property. It cannot constitute a crime of violence. In fact, there are a series of cases in this circuit involving, for example, the Corvino case in which a 9X executive was extorting money from a subcontractor in order to... with the threat that otherwise 9X would not use the subcontractor's services. There are certainly the series of cases involving organized labor efforts to threaten work stoppages or to otherwise disrupt businesses that have been found... Hobbes Act has been found sufficient to satisfy the elements of a Hobbes Act extortion. Neither of those sorts of cases involve the use, attempted use, or threatened use of physical force against a person or property, and under the categorical approach, if a conviction could rest on conduct that does not involve the force required, it is categorically not a crime of violence, and neither is it a crime of violence under subsection B, the risk of force, what some people call the residual clause, because an extortion does not, by its nature, present a substantial risk of the harm set forth in 924C3B. I understand the circuit has ruled on that in Hill. I'm just preserving that argument for any future potential purposes. Thank you. Thank you. Reserve decision.